In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00046-CR


______________________________




DONALD CRAWFORD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 00F0102-005




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Donald Crawford was convicted of aggravated sexual assault, a first degree felony,
pursuant to Tex. Pen. Code Ann. § 22.021 (Vernon Supp. 2002). The jury assessed
punishment at forty years' imprisonment and a $10,000.00 fine. Crawford's appellate
attorney filed a no-merit brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct.
1396, 18 L.Ed.2d 493 (1967). Crawford filed a brief pro se. In four points of error,
Crawford complains that the evidence was both factually and legally insufficient to support
his conviction, that he was denied his Fifth Amendment rights under Miranda v. Arizona,
384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that he was denied effective
assistance of counsel. We affirm the judgment of the trial court.

 In his first two points of error, Crawford alleges the evidence was legally and
factually insufficient to support the verdict. In reviewing the legal sufficiency of the
evidence, we review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). 
In reviewing the factual sufficiency of the evidence, we begin with the presumption that the
evidence supporting the judgment is legally sufficient, see Clewis v. State, 922 S.W.2d 126
(Tex. Crim. App. 1996), and we view all the evidence without the prism of "in the light most
favorable to the prosecution." Jones, 944 S.W.2d at 647. We determine whether a neutral
review of all the evidence, both for and against the verdict, demonstrates that the proof of
guilt is so obviously weak it undermines confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (adopting complete civil factual
sufficiency formulation); see also Clewis, 922 S.W.2d at 131-32. When performing this
review, we give due deference to the jury's assessment of the weight and credibility of the
evidence. Johnson, 23 S.W.3d at 7. We find the evidence factually insufficient only where
necessary to prevent manifest injustice. Id. at 9. If we find factual insufficiency, we vacate
the conviction and remand for a new trial. Jones, 944 S.W.2d at 648; Clewis, 922 S.W.2d
at 133-34.

 The indictment alleged that Crawford intentionally and knowingly caused the
penetration of the female sexual organ of the victim with his sexual organ, without the
victim's consent, by compelling the victim to submit or participate by the use of physical
force or violence, and by threatening to use force or violence against the victim, that the
victim believed Crawford had the present ability to execute said threat, that Crawford by
acts or words placed the victim in fear that death or serious bodily injury would be
imminently inflicted on her, and that Crawford by acts or words occurring in the presence
of the victim threatened to cause the death of or serious bodily injury to the victim. See
Tex. Pen. Code Ann. § 22.021(a)-(c). The jury was instructed in the disjunctive on all the
theories of the offense alleged. Where the alternate theories of committing the same
offense are submitted to the jury in the disjunctive, it is appropriate for the jury to return a
general verdict if the evidence is sufficient to support a finding under any of the theories
submitted. Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

 The victim was fifteen years old at the time of the assault. She testified Crawford
and another man, Stanley Fisher, had stopped by the house where she lived. The victim's
grandmother and sister left the house to go pick up her parents. Shortly after they left,
Crawford told the victim, "Bitch, give me some pussy." The victim said no. Crawford then
moved to where the victim was sitting and began fondling her breast. When the victim tried
to resist, Crawford grabbed her by the arms, yanked her off the couch, carried her into her
bedroom, and threw her, facedown, onto the bed. The victim kicked and screamed while
Crawford removed her clothes and pulled his pants down. Crawford then stated, "[Y]ou
might as well give it to me, because I'm going to get it one way or another." He pinned the
victim down despite her struggles and forced his penis inside her vagina. The victim
screamed and begged Crawford to stop. Crawford used physical force to effect the
assault, which resulted in scratches to the victim's arms and face. The victim further
testified that, when Crawford finished this sexual assault, he and Fisher left, but Crawford
then returned. The victim was talking on the telephone, and Crawford grabbed her by the
throat and told her he would kill her if she ever told anyone. Under pressure of this threat,
the victim then told the caller she had been assaulted by Fisher rather than Crawford. The
victim first reported to the police that Fisher had assaulted her. The next day, once
Crawford was arrested, she felt safe to report that it was Crawford who had actually
committed the assault. The night of the assault, the victim was taken to Wadley Regional
Medical Center for a sexual assault examination.

 Danny Joe McKinney, a friend of the victim, testified he had tried to call the victim's
residence twice. The first time, the telephone receiver was picked up and he could hear
the victim screaming "rape" and "get off me, Donnie" before the telephone line went dead. 
When McKinney called back several minutes later, he spoke with the victim. During that
conversation, he suddenly heard the victim choking and he then heard Crawford say, "[I]f
anybody hears about this, I'm going to kill you." McKinney initially reported Fisher was the
assailant in order to protect the victim, but he also revised his story the following day. 

 John Donahue, employed by the Texas Department of Public Safety in the crime
laboratory, testified that he had compared DNA from the seminal stains in the rape kit to
Crawford's DNA and that Crawford was the source of the stain to a reasonable degree of
scientific certainty. Donahue explained this corresponded to a random match probability
of one in two hundred seventy billion, while the population of the earth is roughly six billion. 
Fisher's DNA profile excluded him as the source of the semen recovered from the victim.

 Alana Coleman, Crawford's fiancee, testified the victim's sister and mother had
come to her house on the night of the assault looking for Fisher, not Crawford. The
defense also presented testimony from Crawford's parents, who each testified they were
familiar with the victim and her family, but they were not considered friends.

 Crawford contends the evidence is legally insufficient because there was no
evidence the victim's vagina was penetrated by Crawford's sexual organ. Crawford further
asserts the victim's initial identification of Fisher as her assailant conclusively shows the
evidence to be factually insufficient. We disagree. The victim testified directly that
Crawford forcibly penetrated her sexual organ with his sexual organ. Further, the jury was
free to accept the testimony of the victim and of McKinney: that initial fear created by
Crawford's threat resulted in a false report to police, but once Crawford was in jail, the truth
came out. See Jones, 944 S.W.2d at 648 (stating fact finder is sole judge of weight and
credibility given witness testimony).

 Viewing all the evidence in the light most favorable to the verdict, we find a rational
trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. We also find a neutral review of the evidence demonstrates the proof of guilt is
neither greatly outweighed by contrary proof nor does it undermine confidence in the jury's
verdict. Crawford's first two points of error are overruled.

 In his third point of error, Crawford argues he was denied his Fifth Amendment
rights under Miranda. The record reveals there was no complaint on this issue made to
the trial court by request, objection, or motion. This point has thus not been preserved for
review. See Tex. R. App. P. 33. Further, Crawford points to no evidence that was illegally
obtained as a result of any alleged Miranda violation. Crawford's third point of error is
overruled.

 In his fourth point of error, Crawford argues his trial counsel rendered ineffective
assistance. To prevail on a claim of ineffective assistance of counsel, an appellant must
establish that his lawyer's performance fell below an objective standard of reasonableness
and that there is a "reasonable probability" the result of the proceeding would have been
different but for counsel's deficient performance. Strickland v. Washington, 466 U.S. 668,
693-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Id., 466 U.S. at 694; Hernandez v.
State, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986). The purpose of this two-pronged test
is to determine whether counsel's conduct so compromised the proper functioning of the
adversarial process as to undermine the reliability of the result. See Thompson v. State,
9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999) (citing McFarland v. State, 845 S.W.2d 824,
843 (Tex. Crim. App. 1992)). The review of defense counsel's representation is highly
deferential and presumes counsel's actions fall within a wide range of reasonable
professional assistance. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). 
When the record is silent on the motivations underlying counsel's tactical decisions, the
appellant usually cannot overcome the strong presumption that counsel's conduct was
reasonable. See Thompson, 9 S.W.3d at 813; see also Tong, 25 S.W.3d at 714; Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Delrio v. State, 840 S.W.2d 443,
446-47 (Tex. Crim. App. 1992). In order to defeat Strickland's presumption of reasonable
professional assistance, the appellant has the burden to firmly ground allegations of
ineffectiveness in the record and the record must affirmatively demonstrate the alleged
ineffectiveness. See Thompson, 9 S.W.3d at 814. In the majority of cases, the record on
direct appeal is undeveloped and cannot adequately reflect the motives behind trial
counsel's actions. Id. at 813-14.

 Crawford alleges four grounds purporting to show his attorney rendered ineffective
assistance. Crawford contends his counsel failed to raise an alleged Miranda violation and
failed to object to the "admission" of Crawford's statement to police as substantive
evidence. On its face, the record does not reveal any Miranda violation. Further, no
statement by Crawford was introduced into evidence at trial.

 Crawford also asserts his attorney waived the ten-day trial preparation period
without his consent. See Tex. Code Crim. Proc. Ann. art. 1.051(e) (Vernon Supp. 2002). 
The only relevant references in the record are a docket sheet entry stating Crawford
appeared with counsel (the same lawyer who represented him at trial) on March 20, 2000,
and an order signed by the judge on December 11, 2000, approving payment of fees to
this same attorney for representing Crawford at trial. There is no order in the record
appointing this attorney to represent Crawford. The docket notation was merely a
memorandum made for the convenience of the trial court and court clerk, and it is not
reliable for the purpose of establishing or overruling error on appeal. See, e.g., First Nat'l
Bank v. Birnbaum, 826 S.W.2d 189, 191 (Tex. App.-Austin 1992, no writ) (op. on reh'g)
(stating docket entries inherently unreliable because they lack formality of orders and
judgments). While the record does not affirmatively disprove Crawford's argument, the
docket sheet entry is some indication he was represented by the same lawyer from March
2000 through the trial in November 2000. Crawford bears the burden of showing deficient
performance by his lawyer. See Strickland, 466 U.S. at 687. He has failed to carry that
burden.

 Crawford also argues his attorney failed to conduct an adequate independent
investigation. Ineffective assistance claims are not generally cognizable on direct appeal,
because there is often evidence that does not appear in the record but is necessary for an
evaluation of counsel's performance. See Ex parte Torres, 943 S.W.2d 469, 475 (Tex.
Crim. App. 1997). This is especially true where the ineffectiveness claim is based on
counsel's alleged omissions. Nothing in the record before this Court reflects the extent of
counsel's investigation or his reasons for proceeding in the chosen manner. We have no
way of evaluating counsel's performance in this respect.

 The record is insufficiently developed with respect to the extent of investigation
conducted or the possible waiver of the trial preparation period. Therefore, we are
unwilling to conclude Crawford successfully defeated the strong presumption that the
decisions of counsel during trial fell within the wide range of reasonable professional
assistance. See Thompson, 9 S.W.3d at 813 (citing Strickland, 466 U.S. at 688). We
overrule Crawford's fourth point of error. 

 The evidence was both legally and factually sufficient to support the verdict. 
Crawford has failed to preserve any Miranda complaint for review, and he has not met his
burden of demonstrating he received ineffective assistance of counsel. 

 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: January 9, 2002

Date Decided: February 7, 2002


Do Not Publish